RAVEN & KOLBE, LLP
Keith A. Raven, Esq. (KR-8086)
Attorneys for Defendant
ECKERD CORPORATION d/b/a RITE AID
and RITE AID CORPORATION, s/h/a
RITE AID CORPORATION d/b/a "RITE AID"
126 East 56th Street, Suite 202
New York, New York 10022
Tel. (212) 759-7466

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------X
CHRISTOPHER STEVENS,                    :   Civil No.: 13-CV-783 (TJM/DEP)
                                        :
            Plaintiff,                  :   **DEFENDANTS' LOCAL RULE**
                                        :   **7.1(a)(3) STATEMENT OF**
    -against-                           :   **MATERIAL FACTS IN SUPPORT OF**
                                        :   **MOTION FOR SUMMARY**
RITE AID CORPORATION d/b/a RITE AID     :   **JUDGMENT**
PHARMACY, a/k/a ECKERD CORPORATION      :
d/b/a RITE AID,                         :
                                        :
            Defendants.                 :
----------------------------------------X

Defendants, ECKERD CORPORATION d/b/a RITE AID and RITE AID CORPORATION, s/h/a RITE AID CORPORATION d/b/a "RITE AID" ("moving defendants" or "Rite Aid"), by and through their attorneys, Raven & Kolbe, LLP, submits the following as their Statement of Undisputed Material Facts pursuant to Rule 7.1(a)(3) of the Local Civil Rules for the Northern District of New York, United States District Court, in support of the moving defendant's Motion for Summary Judgment:[1]

**UNDISPUTED MATERIAL FACTS**

1. Plaintiff was hired by moving defendants' corporate predecessor in 1977, and continued to work as a pharmacist for moving defendants, or one of its corporate predecessors,

---

[1] All Exhibits referred to in moving defendants' Statement of Undisputed Material Facts are those attached to the Attorney Certification of Keith A. Raven, Esq., dated October 1, 2014.

up until August 23, 2011, at which point he was terminated. [Exhibit "H" at 8-9, 10-13]. Plaintiff first became aware that Rite Aid pharmacists were administering immunizations in 2007. [*Id.* at 14-15].

      2.      Plaintiff was never diagnosed with any type of phobia, including trypanophobia ("needle phobia"), plaintiff's alleged disability herein, at any point prior to learning that he would be required to become certified as an immunizer as a pharmacist for Rite Aid. [*Id.* at 16]. Plaintiff began treating with Dr. Warfel, his family doctor, at some point in his mid-40s (he is now 59 years old), and plaintiff has had blood drawn via a needle at least ten (10) times thereafter. [*Id.* at 20]. Plaintiff denied ever passing out as a result of having blood drawn; denied ever having to be hospitalized as result of having blood drawn or receiving an injection; and denied ever having any conversations with anyone concerning him actually having a phobia with regard to needles until March of 2011. [*Id.* at 21].

      3.      Plaintiff first learned that immunization training would be necessary to continue working as a pharmacist for Rite Aid in March of 2011, when he received an e-mail from Rite Aid Pharmacy District Manager, William Spink. [*Id.* at 33-34]. At that time, plaintiff was working at the Rite Aid store located at 1711 Genesee Street in Utica, New York, where he had been working since December of 2010. [*Id.* at 34].

      4.      In response, plaintiff contacted Dr. Warfel's office and requested a note stating that he is "needle phobic" and, therefore, that he cannot administer injections. [*Id.* at 40-47]. Subsequently, plaintiff sent Rite Aid a March 21, 2011 letter, wherein plaintiff proclaims: "I have a disability that will prevent me from becoming an immunizing pharmacist." [*Id.* at 50]. Plaintiff could not recall any healthcare provider ever telling him he had a "disability" in this regard, and he admitted that that term was his and his alone, which he had come up with after

researching the Americans with Disabilities Act online. [*Id.* at 51, 55]. Furthermore, plaintiff wrote in the aforesaid letter that "because of this condition I would never even consider trying to become an immunizing pharmacist" and "I believe the Americans with Disabilities Act and Rite Aid HR 1.3 would direct the company to provide accommodation for me in this situation." [*Id.*].

5. In response to plaintiff's letter, Rite Aid engaged in the interactive process with plaintiff, which involved a list of questions concerning what restrictions plaintiff claims to have; what accommodations, if any, plaintiff was seeking; and what essential job functions plaintiff claims to be restricted or limited in performing. [Exhibit "N" at 12]. Plaintiff identified immunizing as his only restriction, and that he wanted to be excused from this essential job function altogether. [*Id.* at 22]. With regard to possible or proposed accommodations, neither plaintiff, nor his doctor offered any, simply stating that plaintiff would be unable to administer immunizations under any circumstances, without more. [*Id.*].

6. After plaintiff had been repeatedly urged to undergo the requisite training, and since plaintiff was simply unwilling to attend any classes, or to become certified as an immunizer, let alone administer injections, it was determined that plaintiff would have to either accept another position within the company, such as a pharmacy technician, or his employment as a pharmacist would have to be terminated by virtue of his inability to perform this essential job function. [*Id.* at 34]. Plaintiff did not want to work as a technician due to the rate of pay [*Id.* at 35], and in the absence of any other viable accommodation, there was no other choice but to terminate plaintiff's employment. [*Id.* at 41].

7. Contrary to plaintiff's testimony otherwise, Dr. Warfel never told plaintiff that he could not undergo immunization training, and never advised the plaintiff that attending such

classes would present an adverse health effect. In fact, Dr. Warfel refused to give plaintiff a note stating that he could not attend Rite Aid's immunization training classes, despite plaintiff's request for same. [*Id.*].

8. Prior to the events giving rise to plaintiff's lawsuit, Rite Aid's immunization program began in 2007, and such training had been completed for all Rite Aid pharmacists to administer immunizations in 2011. [Exhibit "O" at 9, 11-12]. Rite Aid pharmacists had already begun administering immunizations prior to 2007 in certain geographic localities [*Id.* at 14], and being certified as an immunizing pharmacist became a mandatory corporate policy in early 2011, prior to training that commenced in April of that year. [*Id.* at 17-18].

9. Rite Aid decided that immunizing was going to be an essential job function and requirement for all pharmacists across the country, and anyone that could not perform that essential job function would not be able to be a pharmacist. [Exhibit "M" at 7-8]. Rite Aid's job description for Pharmacy Manager specifically identified administering immunizations and required immunization certification as an essential job function, which plaintiff acknowledged receiving prior to the events giving rise to this lawsuit. [Exhibit "D" "Immunization Program" dated February 2011; Exhibit "G" "Rite Aid Job Description for Pharmacy Manager;" Exhibit "H" at "60-62"].

10. Plaintiff never sought help or treatment for his "needle phobia," either before or after his termination from Rite Aid. [Exhibit "H" at 82, 90]. In fact, plaintiff is aware of "desensitization" therapy to help overcome "needle phobia," notwithstanding the fact that he has no intention of trying such treatment. [*Id.* at 115-116].

11. Plaintiff's own expert, Dr. Dattilio, opines in his report, dated March 21, 2014 [Exhibit "R"], that plaintiff's "needle phobia" is "treatable with an intervention know as

Cognitive Behavior Therapy and exposure de-sensitization," which he states is both affordable and "would not require long-term therapy." [Exhibit "R" at 16]. On this point, Dr. Dattilio notes in his report that up to 90 percent of individuals with such "phobias" "achieve clinically significant long-lasting improvement in as little as one session of behavioral treatment, namely exposure therapy," and that such phobias are among the most treatable of anxiety disorders. [*Id.*].

12. Plaintiff filed a Charge of Discrimination with the EEOC on January 11, 2012 [Exhibit "A"], and plaintiff filed his Amended Complaint with this Honorable Court on July 22, 2013. [Exhibit 'B'].

Dated: New York, New York
October 1, 2014

Respectfully submitted,

**RAVEN & KOLBE, LLP**

By: _____
Keith A. Raven (KR-8086)
Attorneys for Defendants
ECKERD CORPORATION d/b/a RITE AID
and RITE AID CORPORATION s/h/a RITE AID
CORPORATION d/b/a "RITE AID"
126 East 56th Street, Suite 202
New York, New York 10022
Tel.: (212) 759-7466
Fax (212) 759-0166
File No.: 904-280-01

TO:

**HANCOCK ESTABROOK, LLP**
Attorneys for Plaintiff
CHRISTOPHER STEVENS
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
Tel.: (315) 565-4500
Fax (315) 565-4600