UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER STEVENS,

                                Plaintiff,

v.

RITE AID CORPORATION d/b/a RITE AID
PHARMACY, a/k/a ECKERD CORPORATION d/b/a
RITE AID,

                                Defendant.

Civil Action No.:
6:13-CV-783
(TJM/DEP)

---

## DECLARATION OF KAREN A. SIMONE

I, Karen A. Simone, MS, CRC, CLCP, pursuant to 18 U.S.C. § 1746, hereby declare as follows:

1. I am a Certified Vocational Rehabilitation Specialist and Life-Care Planner with K. Simone & Associates, LLC in Syracuse, New York. I was retained by Plaintiff Christopher Stevens in connection with this matter to conduct an employability and earnings capacity evaluation, and I submit this Declaration in opposition to the Motion for Summary Judgment filed by Defendant Rite Aid.

2. On or about March 20, 2014, I completed an employability and earnings capacity assessment including a labor market analysis for positions that Mr. Stevens may be qualified to perform. A true and accurate copy of that assessment is attached hereto as **Exhibit 1**.

3. I have reviewed Rite Aid's memorandum of law in support of its motion for summary judgment, and I disagree with its general contention that there were no

reasonable accommodations available, at the time Mr. Stevens was terminated, that would have allowed Mr. Stevens to continue his employment with Rite Aid despite the fact that he could not administer immunizations due to his fear of needles.

4. As set forth more fully in my report, it is my professional opinion, with a reasonable degree of certainty within the field of vocational rehabilitation, that there were accommodations that could have been considered to allow Mr. Stevens to remain employed with Rite Aid, including but not limited to:

   a. **Desensitization training**. Rite Aid could have offered to send Mr. Stevens to desensitization training for people with anxiety disorders (needle phobia in this case) so that he may have had the opportunity to overcome his fear of needles and perform that job function without limitation.

   b. **Provide immunization schedule**. Rite Aid could have developed an immunization schedule at Mr. Stevens' store location that would enable him to work only during non-immunization time schedules. It may be under this scenario that Mr. Stevens would have had to modify his work schedule to a part-time status.

   c. **Reassign Mr. Stevens to larger store**. Rite Aid has approximately 4,600 stores in 31 states within the United States in which they could have offered Mr. Stevens a transfer to a larger, busier store where two pharmacists are staffed simultaneously, or where there is a potential to have two pharmacists staffed for at least part of the same shift. It may be under this scenario that Mr. Stevens would have needed to reduce his hours to a part-time schedule (i.e., only schedule Mr. Stevens during the busiest times of the day in the larger stores).

   d. **Reassign immunizations to a store close by**. There are ten Rite Aid pharmacy stores within an eleven mile radius in the Utica/Rome area. Some are only separated by a few blocks or a few miles. Rite Aid could have transferred Mr. Stevens to a store that has another store in close proximity so that immunizations could be diverted to a close by store.

   e. **Offer Mr. Stevens an alternate position.** Rite Aid has several other positions within their company that Mr. Stevens possesses the skills and abilities to perform, viz.; wellness ambassador, pharmacy technician, and customer service representative. Offering Mr. Stevens an alternate position

within the company was not explored.[1]

5. The reasonable accommodation proposed at paragraph 4(c) specifically rebuts Rite Aid's contention (Attorney Certification of Keith Raven, ¶ 48) that reassignment to a larger store with multiple or overlapping pharmacists was not a viable accommodation. Support for the viability of this accommodation can be found in the deposition testimony of William Spink, Rite Aid Pharmacy District Manager, that there were Rite Aid stores in Central New York that staffed more than one pharmacist at a time on certain days of the week. See Exhibit J to the Attorney Certification of Keith Raven, pp. 20-27. Specifically, Mr. Spink testified that, between 2010 and 2012, several Rite Aid stores within his district, including stores in Rome, Manlius, Herkimer and Utica, had more than one pharmacist working at the same time on the busiest days of the week. Id. Mr. Spink further testified that, in his current district, stores in Liverpool, Baldwinsville, Mattydale, and Massena all receive similar overlap coverage throughout the week. Id. Accordingly, reassignment to a larger store was, in fact, a reasonable accommodation that would have allowed Mr. Stevens to remain employed with Rite Aid, even if it meant reducing his employment status to part-time. See Exhibit 1, p. 5 (noting that, with respect to feasibility of reassignment Mr. Stevens to a larger store as an accommodation, "[i]t may be that under this scenario Mr. Stevens would have needed to reduce his hours to a part-time schedule (i.e., only schedule Mr. Stevens during the busiest times of the day in the larger stores).").

6. As set forth more fully in my report, it is my professional opinion, with a

---

[1] It is my understanding that there is conflicting testimony as to whether Mr. Stevens was, in fact, offered a non-pharmacist position at Rite Aid prior to his termination, and that Rite Aid has not produced any evidence of a written job offer made to Mr. Stevens for a non-pharmacist position.

{H2394064.2}

-3-

reasonable degree of certainty within the field of vocational rehabilitation, that Mr. Stevens is qualified and capable of working as a retail pharmacist with an accommodation, and that Rite Aid did not make an effort to provide a reasonable accommodation for Mr. Stevens' disability.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  October 23, 2014

_____
Karen A. Simone, MS, CRC, CLCP