# K. SIMONE & ASSOCIATES, LLC
## Vocational Rehabilitation and Life-Care Planning Services

Karen A. Simone, MS, CRC, CLCP
215 Brookford Road
Syracuse, New York 13224

Phone: 315-560-5063
Fax:    866-728-1014
email:  ksimone@twcny.rr.com

March 20, 2014

Mr. Robert J. Thorpe, Esq.
**HANCOCK ESTABROOK, LLP**
**COUNSELORS AT LAW**
1500 AXA Tower
100 Madison Street
Syracuse, New York 13202

Re:  Christopher Stevens vs.
Rite Aid Corporation.

Dear Mr. Thorpe:

At your request, I have completed an employability and earnings capacity assessment including, a labor market analysis[1] for the greater Central New York and Mohawk Valley Region for the present period for positions that Mr. Christopher Stevens may be qualified to perform.  As part of my analysis I reviewed the following information:

1. Medical records received from Dr. Mark Warfel, St. Elizabeth Family Practice, dated January 3, 2014, and correspondence from Dr. Warfel to Rite Aid on May 24, 2011;

2. Documents pertaining to Mr. Stevens' educational and vocational history, Rite Aid's company policies and procedures, Mr. Stevens' performance review for the year 2011, a copy of his job description, certain awards and recognitions, copies of correspondence between Mr. Stevens' and his superiors; and

3. Copies of Mr. Stevens' work search history following his termination, including letters sent to various employers in an effort to obtain employment.

---

[1] *The practice of researching labor market information in order to identify whether selected occupations exist within the targeted local or regional job market including, number of position vacancies, wage rates, and employment projections.*

I also completed other tasks essential to the process, including:

1. Research and utilization of labor market statistics, wage rates, fringe benefits, and other employment and labor statistics compiled by the New York and U.S. Departments of Labor;

2. Conduct of an analysis of Mr. Stevens' transferable knowledge and skills, employability, and earnings capacity, including representative wages for exemplary occupational endeavors; and

3. Conduct of a search for contemporaneous position vacancies that may be realistic alternatives for Mr. Stevens' to consider as employment opportunities, including wage information when available.

Set forth below are my findings and recommendations which follow a brief background section.

## Background

***Personal.*** Mr. Christopher Stevens of Whitesboro, Oneida County, New York, is a 59.4-year-old (d.o.b. October 1, 1954), right-handed, married, father of four children born to Frederick and Jane Stevens. Mr. Stevens' father, Frederick, who is deceased at age 51 from cancer, left school in the 8th grade and worked as a roofer and sider in the construction industry. Mr. Stevens' mother, Jane, who is deceased at age 52 from pancreatic cancer, was a high school graduate and worked as a bakery clerk. Mr. Christopher Stevens has four siblings, viz:

- Frederick, Jr.; age 67, is a high school graduate and a retired corrections officer;
- Dale (female); a 65-year-old high school graduate who is a homemaker;
- Tim; a 62-year-old high school graduate who works as a machine operator and warehouse worker; and
- Mike; age 57, achieved an associate's degree in business and works as a production supervisor.

All siblings were reported to reside in the Mohawk Valley region and were reported to be in good health.

***Marital/Familial.*** Mr. Christopher Stevens married Elinor Stevens on April 23, 1983. Elinor is a 56-year-old pre-school teacher who achieved some college. They have had four children together, viz.; Lacey, a 28-year-old high school English teacher who achieved a master's degree; Kali, a 26-year-old administrative assistant who completed two years of college; Christopher, Jr., age 24, who achieved a bachelor's degree in business and works for The Hartford Insurance Company as a customer service representative; and Lana, a 21-year-old college senior at SUNY I.T. who works as a cosmetologist and a model.

***Education and Training.*** Mr. Stevens graduated from Whitesboro Central High School in 1972 with a Regents Diploma where, by his report, he achieved "A's" and graduated near the top of his

class. He stated his favorite subjects were science and Russian and he least enjoyed English with the exception of reading.

Mr. Stevens in 1972 enrolled at Utica College where he completed two years before transferring to the Albany College of Pharmacy. He graduated in May 1977 with a bachelor of science in pharmacy which, at the time, was a five-year degree program.

***Work History.*** Mr. Stevens at the age of 16 began working at Carl's Drug Store as a **stock clerk**. He remained employed at Carl's as a stock clerk during high school and on weekends while attending college. When he achieved his degree in pharmacy, Carl's Drug Store hired Mr. Stevens as a **pharmacist** where he remained throughout his entire career.

Throughout Mr. Stevens' long career as a pharmacist, ownership of Carl's Drug Store changed hands several times. More specifically, Carl's was bought out by Fays in 1991, and in 1997, Fays was bought out by Eckerd. Finally, Eckerd was bought out by Rite Aid in 2007 where Mr. Stevens remained employed as a pharmacist until his termination on August 23, 2011. Mr. Stevens' career as a pharmacist spanned over 30 years with the same employer.

**Certifications/Licensure.** My review of the New York State Office of The Professions revealed that Mr. Stevens is a licensed registered pharmacist in the State of New York.

* License No.: 31069
* Registration Certificate No.: 8317626 (Valid through 09/30/16)

Mr. Stevens reported that his license has never been suspended or revoked.

***Awards/Recognition.*** Mr. Stevens in 2010 was voted the Rite Aid 2010 "Favorite Pharmacist" by his customers. He also received a Customer Service Star in 2008. Moreover, he received recognition from the President and CEO of Rite Aid for 40 years of service.

***Prior Medical History.*** My interview of Mr. Stevens along with my review of the medical records provided revealed that Mr. Stevens' medical history is notable for trypanophobia (an extreme fear of medical procedures involving injections or hypodermic needles), acrophobia (irrational fear of heights), and low back pain.

I was not provided with any other medical records that would indicate additional medical restrictions from the items discussed above that would adversely affect his ability to work within the competitive labor market.

<u>**Nature of Disability and Subsequent Job Termination**</u>

Mr. Stevens had been an employee with the same company (through several acquisitions) for 40 years. In 2011 his employer, Rite Aid, began mandating that their pharmacists become certified to immunize customers in their drug stores. Unfortunately, Mr. Stevens has been diagnosed with trypanophobia for which he is unable to tolerate administering injections. Set forth below is my review of the correspondence between Mr. Stevens', Dr. Warfel, and Rite Aid management.

Mr. Stevens' on March 21, 2011, sent correspondence to Mr. Bill Spink, Rite Aid District Pharmacy Manager, where he informed Mr. Spink that he would be unable to become an immunizing pharmacist due to his disability (trypanophobia) and requested an accommodation given Rite Aid's market saturation and close proximity of many stores in the Utica/Rome area.

Mr. William Farley, Rite Aid Human Resource Manager, on May 20, 2011, asked for clarification from Mr. Stevens' physician regarding his disability, including:

> " Are there other restrictions or limitations resulting from your trypanophobia?
> " Are there any other tasks other than delivering immunizations by injection that Christopher cannot do? . . .
> " Does Christopher have any phobias other than delivering immunizations by injection?
> " What would the side effects on Christopher be if he were to administer an immunization by injection?
> " Are there any accommodations that would enable Christopher to perform the essential pharmacy function of administering immunization by injection? . . ."

Dr. Warfel on May 24, 2011, responded by stating: "Mr. Stevens has a fear associated with receiving or watching blood draws, hypodermic injections. He cannot watch surgical procedures or bleeding. . . . Heavy lifting can cause pain related to his low back pain. . . . He is afraid of heights. . . ." When asked what the effects on Christopher would be if he were to administer an immunization by injection, Dr. Warfel replied: "He would become diaphoretic, hypotensive and probably faint (vagal response)." Moreover, Dr. Warfel was asked if there were "any accommodations that would enable Christopher to perform the essential pharmacy function of administering immunization by injection . . ." Dr. Warfel replied: "He cannot safely administer. Consider the scenario of Chris Stevens RPh trying to vaccinate a person and fainting as the needle is placed in the skin/muscle. This would be unsafe for the patient and Mr. Stevens."

Mr. Spink in an August 18, 2011, correspondence to Mr. Stevens stated: "We do not believe that you are disabled under applicable law. ¶ Moreover, the ability to immunize patients is an essential part of your job as a pharmacist. We cannot eliminate this essential function of your job, regardless of whether you or not (sic) are disabled. ¶ Since you are refusing to perform immunizations, with or without reasonable accommodations, we are terminating your employment at this time."

Considering Mr. Stevens' diagnosis of trypanophobia and the fact that he was terminated from Rite Aid related to his inability to immunize patients, research was conducted related to the licensing requirements of a pharmacist in New York State. My research into the license requirements for a

pharmacist in New York State, according to the New York State Education Department, Office Of The Professions revealed that certification to immunize or vaccinate patients (18 years or older) is not a requirement to be a licensed pharmacist. The certification to administer immunizations is a separate training program with a separate certification that a pharmacist has the option to pursue.

**Conclusion #1:**   Mr. Stevens fully meets the license and registration requirements of a pharmacist without restriction under New York State Education Department, Office Of The Professions.

### Reasonable Accommodation

My review of the records along with my interview of Mr. Stevens revealed that Rite Aid did not make a reasonable effort to accommodate for Mr. Stevens' inability to immunize patients. It is my professional opinion, with a reasonable degree of certainty within the field of vocational rehabilitation, that there are several accommodations that could have been considered to allow Mr. Stevens' to remain employed with Rite Aid, viz.:

1. **Desensitization training.** Rite Aid could have offered to send Mr. Stevens to desensitization training for people with anxiety disorders (needle phobia in this case) so that he may have had the opportunity to overcome his fear of needles and perform that job function without limitation.

2. **Provide immunization schedule.** Rite Aid could have developed an immunization schedule at Mr. Stevens' store location that would enable him to work only during non-immunization time schedules. It may be under this scenario that Mr. Stevens would have had to modify his work schedule to a part-time status.

3. **Reassign Mr. Stevens to larger store.** Rite Aid has approximately 4,600 stores in 31 states within the United States in which they could have offered Mr. Stevens a transfer to a larger, busier store where two pharmacists are staffed simultaneously, or where there is a potential to have two pharmacists staffed for at least part of the same shift. It may be that under this scenario Mr. Stevens would have needed to reduce his hours to a part-time schedule (i.e., only schedule Mr. Stevens during the busiest times of the day in the larger stores).

4. **Reassign immunizations to store close by.** There are ten Rite Aid pharmacy stores within an eleven mile radius in the Utica/Rome area. Some stores are only separated by a few blocks or a few miles. Rite Aid could have transferred Mr. Stevens to a store that has another store in close proximity so that immunizations could be diverted to a close by store.

5. **Offer Mr. Stevens an alternate position.** Rite Aid has several other positions within their company that Mr. Stevens possesses the skills and abilities to

5

perform, viz.; wellness ambassador, pharmacy technician, and customer service representative. Offering Mr. Stevens an alternate position within the company was not explored.

The accommodations provided above could have been implemented separately or, in some cases, in combination to effectively accommodate for Mr. Stevens' inability to immunize patients at Rite Aid. Based upon the information provided at the time of the present report, none of the accommodations above were explored or offered by Rite Aid.

**Conclusion #2:**    Rite Aid failed to make an effort to provide Mr. Stevens with a reasonable accommodation, for which he was subsequently terminated from employment and consequently sustained negative economic consequences.

## Clinical Impressions

I had an opportunity to interview and evaluate Mr. Stevens on January 15, 2014. He was a cooperative and knowledgeable historian of his personal, familial, educational, and vocational backgrounds. He was casually, but appropriately dressed and appeared to be his stated age of 59 years. His vocabulary and fund of knowledge were consistent with his higher level of education.

Mr. Stevens initially impressed me as a quiet and somewhat depressed gentleman. He initially had difficulty making eye contact but as the interview progressed it became clear that his demeanor was associated with an embarrassment of no longer being employed as a pharmacist. Moreover, an inability to secure even one job interview since his termination, despite his job search efforts, was also a significant source of embarrassment and lack of confidence. He expressed discouragement about his chances of getting hired due to his age and the fact that he has never worked as a pharmacist outside of the retail industry.

When discussing his long tenure with Rite Aid, Mr. Stevens appeared upset that they would not allow him to continue working there as a pharmacist without having to immunize considering he had been a loyal employee for 40 years. He stated he had not planned to retire this young and is very concerned about his financial future.

Based upon Rite Aid's unwillingness to provide accommodation and the subsequent unfortunate employment discrimination action, Mr. Christopher Stevens' has incurred a loss of earnings capacity, the nature and rationale, in part, extent of which are set forth below.

## Loss of Earnings Capacity

Mr. Christopher Stevens at the time of his termination had been employed since 1977 as a **pharmacist** for Rite Aid. As part of my determination of Mr. Stevens' pre-incident earnings capacity, I had an opportunity to examine copies of his income tax returns and W-2 statements for the years 2008 through 2011. Set forth below as Table 1 are the results of my study of Mr. Stevens' income history.

### Table 1: Mr. Christopher Stevens
### Income History by Year 2008 through 2011

| Date/Year | Company Name | Annual Salary* |
|-----------|--------------|----------------|
| 2008 | Brooks Pharmacy, Inc. | $132,417.70 |
| 2009 | Rite Aid | $135,175.15 |
| 2010 | Rite Aid | $131,705.66 |
| 2011 | Rite Aid | $ 90,197.76** |

\*   Based on Mr. Stevens' W-2 statements and tax returns for the years 2008 through 2011.
\*\*  Partial year of employment; terminated 08/23/11.

Thus, for the purposes of the present determination based on Mr. Stevens' actual earnings, with a reasonable degree of certainty within the field of vocational rehabilitation, that Mr. Stevens' pre-incident **earnings capacity may be estimated as an average of the last full three years of employment, as determined by the economist**.

Mr. Stevens' had been employed with the same employer for the span of his entire career as a pharmacist and had no plans to retire in the immediate future. It is my professional opinion, based upon his longevity of employment with Rite Aid, that Mr. Stevens' would have in all probability continued to work in the same capacity for the remainder of his worklife expectancy had he not been terminated from employment.

### Mitigation of Pay and Benefits.

Upon termination from Rite Aid Mr. Stevens stated that he attempted to mitigate his circumstances by conducting an extensive job search in an effort to identify employment by utilizing resources such as internet job search engines, corporate websites, and the New York State Department of Labor. My review of Mr. Stevens' job search records revealed that he had contacted several retail pharmacies in his area over the course of a year-and-a-half. Mr. Stevens stated that none of his contacts resulted in an interview or job offer.

Rite Aid chose not to consider job accommodations to help Mr. Stevens remain employed, which resulted in termination from his employment. Having been unemployed for several years, despite Mr. Stevens work search efforts, an employability analysis was undertaken in an effort to illuminate realistic estimates of Mr. Stevens' employability and earnings capacity.

## Employability Analysis

"Employability" refers to a person's capability of obtaining and maintaining employment. Employability potential takes key factors into account including, a person's general and specific knowledge, vocational and academic skills, how well they present their assets to potential employers, and the labor market environment at the time of their job search.   Set forth below are the relevant factors related to Mr. Stevens' assets and barriers associated with his employability.

I.   Assets:
    a.   Bachelor's degree in pharmacy;
    b.   Valid pharmacy license in the State of New York;
    c.   Good transferable skills;
    d.   Several years of experience as a pharmacist;
    e.   Recognition of career achievements; and
    f.   Consistent work history.

II.   Barriers:
    a.   Involuntary termination from employment related to a diagnosis of trypanophobia;
    b.   Age 59; considered an older worker;
    c.   Work experience limited to a retail setting;
    d.   Competing with job applicants who hold a Pharm.D. degree and who have completed a post-graduate residency; and
    e.   Over two years of absence from the labor market.*

* Current research has shown that "Long-term unemployment can lead to subsequent difficulties in securing work. The stigma of being out of work for an extended period tends to worsen employment prospects. Another barrier is created by the erosion of skills that can come from long-term unemployment….the probability of finding a job is significantly lower for the long-term unemployed than it is for people who have spent less time out of work." *(Source: Brauer, D. and Whalen, C., The Slow Recovery of the Labor Market, Congressional Budget Office, February 2014.)*

According to the U.S. Department of Labor (*Dictionary of Occupational Titles, Fourth Edition*, U.S. Department of Labor, Washington, D.C., at *www.OALJ.DOL.gov*), Mr. Christopher Stevens' academic preparation, job-skill training, and vocational experience fostered a number of transferable skills; they include familiarity and/or knowledge of:

**Pharmacist**

1. Review prescriptions issued by physician, or other authorized prescriber to assure accuracy and determine formulas and ingredients needed.

2. Compound medications, using standard formulas and processes, such as weighing, measuring, and mixing ingredients.

3. Direct pharmacy workers engaged in mixing, packaging, and labeling pharmaceuticals.

4. Answer questions and provides information to pharmacy customers on drug interactions, side effects, dosage and storage of pharmaceuticals.

5. Maintain established procedures concerning quality assurance, security of controlled substances, and disposal of hazardous waste drugs.

6. Enter data, such as patient name, prescribed medication and cost, to maintain pharmacy files, charge system, and inventory.

Affixed to this report as Appendix A is a job description for the occupational title of pharmacist as promulgated by the U.S. Department of Labor and listed in the *Dictionary of Occupational Titles*.

As part of my study of Mr. Stevens' employability, I conducted a transferable skills analysis to determine if there were alternative occupations that he may be able to perform given his education, skills, and abilities. As preparation for conducting the transferable skills analysis, I utilized standard vocational resources (e.g. Dictionary of Occupational Titles (DOT), Bureau of Labor Statistics and Occupational Outlook Handbook (OOH)) to assist with my research. The Transferable Skills Analysis (TSA), job-person match, was completed using SkillTran on-line program. SkillTran is a computerized job matching system that cross-references an individual's qualifications profile with 12,761 occupations classified by the Dictionary of Occupation Titles (D.O.T), Revised Fourth Edition (1991). Few occupations emerged from the analysis that were considered close and directly transferable matches for Mr. Stevens.

Based upon my analysis of Mr. Stevens' education, work experience, aptitudes, and apparent interests (based on education and previous employment), he possesses sufficient transferable skills to perform the work as a pharmacist or a pharmacy technician. Set forth below in Table 2 are the pharmacy-related occupations and their associated earnings that may compatible with Mr. Stevens' transferable skills.

**Table 2: Mr. Christopher Stevens
Employment Occupations by Job Title**

| Job Title | D.O.T. Code | Average Annual Salary |
|---|---|---|
| Pharmacist (Retail) | 074.161-010 | $117,473 |
| Pharmacist (Clinical) | 074.161-010 | $102,635 |
| Pharmacist (Mail Order) | 074.161-010 | $109,640 |
| Pharmacist (Consultant) | 074.161-010 | $106,076 |
| Pharmacist Technician | 074.382-010 | $ 25,795* |

Source: www.DrugChannels.net; www.RXeConsult.com; www.salary.com; www.payscale.com.
* *Median Wage Data from the Occupational Employment Survey in the Mohawk Valley and Central New York Regions based upon New York State Department of Labor, Bureau of Vital Statistics, Division of Research and Statistics, Albany, New York, 2013.*

## Labor Market Research

In order to ascertain if the occupations listed above in Table 1 existed in the Central New York labor market and were feasible for Mr. Stevens to pursue, labor market research was conducted in which position vacancies and job requirements were identified for the positions of pharmacist and pharmacy technician. Moreover, considering there are several venues in which a pharmacist may be employed, those were researched individually in order to ascertain varying job requirements. The results of my study are set forth below.

***Pharmacist (Retail).*** Considering Mr. Stevens is a registered licensed pharmacist in New York State and has extensive work experience in the retail pharmacy industry, he is fully qualified to work as a retail pharmacist. Several retail pharmacies were contacted in an effort to identify the immunization requirements needed of a retail pharmacist. Set forth below in Table 3 are my findings.

### Table 3: Mr. Christopher Stevens
### Retail Pharmacist Immunization Requirements

| Employer | Immunizations Given At Every Location? | Does a Pharmacist Administer the Immunizations? | Mandatory for Pharmacist? |
|---|---|---|---|
| **CVS** Manlius Location 315.682.1918 Contact: Pharmacy Technician | Yes | Yes | Would not comment |
| **Wegmans** Clay Location 315.622.4632 Contact: Nancy (Pharmacy) | Yes | Yes | Would not comment – Referred to District Office |
| **Walgreens** 315.457.2531 Contact: Carol (District Administrative Pharmacy Supervisor) | Yes | Yes | Would not comment |
| **Target** Camillus Location 315.233.0601 | Yes | Yes | Would not comment |
| **Walmart** Clay Location 315.622.5405 Contact: Pharmacy Technician  Camillus Location 315.487-0121 Contact: Pharmacy Technician | Yes Vaccinations not administered this year but have been in the past and will continue to be in the future. | Yes | Would not comment |

**Conclusion #3:**   Based upon my research, all local retail pharmacies offer certain immunizations and vaccines, albeit the frequency and type vary between the different companies. Immunizations are administered by their pharmacists. Although Mr. Stevens is a qualified and licensed pharmacist, I was unable to confirm that administering immunizations is mandatory. Moreover, a contemporaneous job search for retail pharmacist positions in the Central New York and Mohawk Valley Regions did not reveal any open position vacancies.

*Pharmacist (Clinical).*  Mr. Stevens has never worked in a clinical setting and therefore, labor market research was conducted to determine his ability to transfer from a community (retail) setting into a clinical setting (hospitals, long-term care facilities, inpatient clinics, etc). Contact was made with universities who educate pharmacists, professional organizations, and medical facilities. Set forth below in Table 4 are my findings.

### Table 4:  Mr. Christopher Stevens
### Clinical Pharmacist Requirements

| Contact | Type | Results |
|---|---|---|
| Long Island University - Arnold and Marie Schwartz College of Pharmacy and Health Sciences<br><br>Contact:  Cheryl Evans BS, MS, Ed.D  (718-488-1234) Director of Pharmacy Academic Affairs | University with Pharmacy Program | Pharmacy training is the same for all students regardless of retail or clinical career interest. Clinical pharmacy positions could be very specialized and prefer candidates with extensive experience in a particular discipline (viz., geriatrics, pediatrics, etc). A pharmacist with only retail experience should enroll in clinically oriented coursework to prepare for a transition to a clinical pharmacy role. Larger hospitals also need staff pharmacists; however, additional training would be needed in order to mix certain medications such as IV bags, chemo treatments, etc. |
| Albany College of Pharmacy and Health Sciences<br><br>Contact:  Jeffrey Brewer, Pharm D, BCACP (518-694-7282) Associate Professor | University with Pharmacy Program | No difference in training curriculum for students pursuing retail versus clinical. Newer Pharm D program offers didactic and experiential training and provides the student with a lot of professional flexibility. Perception exists among clinical pharmacy community that long-term retail pharmacists do not use the same skill set on a daily basis as clinical pharmacists.  It was suggested that clinically focused programs, volunteer opportunities and residency training be pursued to help overcome the perception |

| | | |
|---|---|---|
| | | issues in order to bridge over to clinical pharmacist. Moreover, most hospitals now require clinical pharmacists to complete a post graduate residency. It was suggested to contact the American Society of Health System Pharmacists (ASHP) for further information about residency requirement |
| American Society of Health System Pharmacists (ASHP) Contact: Ryan (865-279-0681) | Professional Organization | Ryan stated they do not govern much and to contact the New York State Pharmacy Board |
| New York State Pharmacy Board-Continuing Education Contact: Mary Anne (518-474-3817 x 130) | Governing Organization | Continuing education requirements are the same for all pharmacists, regardless of prior bachelor degree or newer Pharm D. There is no policy that requires clinical pharmacists working in a hospital or healthcare center to complete a post graduate residency program. Employment qualifications (beyond state requirements) are determined by each respective facility. |
| Veteran's Affairs Medical Facility Syracuse, New York  Contact: Amy A. Gutowski, Pharm.D. Pharmacy Residency Program (315) 425-4400 53778 | Medical Facility | The VA does have a 1-year post graduate residency program. There are two positions available each year. Applicants must have a Pharm D to be considered. The VA and other medical facilities are leading towards a culture in which completion of a post residency program is preferred for a clinical pharmacy position. A post-graduate program is not "necessarily required" for a staff pharmacist role, but a majority of the applicants competing for the position will have it. |
| SUNY Upstate Medical University Contact: Lisa Phillips, Pharm.D., CACP, BACP College of Pharmacy (315) 464-2500 | Medical Facility | Clinical pharmacist positions at Upstate are all inpatient, as they contract with retail pharmacies to provide the outpatient pharmacy services typically performed by staff pharmacists. Most clinical pharmacists at Upstate have completed a post-graduate residency program. Dr. Phillips noted that Upstate's program is very competitive and attracts the top Doctor of Pharmacy graduates nationwide. She notes that entrance decisions into their residency program are made on a case by case basis; however, she can only recall one student during her tenure that did not have a Pharm.D. Furthermore, Dr. Phillips opined that retail pharmacists do not have the |

|  |  | experience of having access to patient data (medical records/laboratory results), collaborating with physicians and residents (collaborative drug therapy management), and meeting with patients. |
| Coram HealthCare www.coramhc.com | Home Infusion Services | Must have a Pharm. D. to apply for a post-graduate residency position. |

Given the results of the labor market research noted above related to the competitive requirements of a clinical pharmacist, a search for contemporaneous job openings for clinical pharmacists was undertaken. Set forth below in Table 5 are my findings.

### Table 5: Mr. Christopher Stevens
### Job Openings, Job Title, and Job Requirements of Clinical Pharmacists

| Employer | Job Title | Job Requirements |
| --- | --- | --- |
| SUNY Upstate Medical University | Clinical Pharmacist | • Previous hospital experience<br>• Completion of pharmacy residency |
| GLC Associates | Clinical Pharmacist | • Previous hospital experience preferred. |
| ABPS Medical Staffing | Clinical/Staff Pharmacist | • One year hospital experience<br>• Retail pharmacists considered if they haven't worked in retail longer than 2-3 years. |

Source: www.indeed.com

It should be noted that some hospitals have staff pharmacists to service their outpatient prescription needs as well as assisting the needs of inpatient customers. Two of the major medical employers in the Central New York area were contacted, viz.; Saint Joseph's Hospital and SUNY Upstate Medical University, to discuss the differences between clinical pharmacists and staff pharmacists in a clinical setting. Both employers stated that they contract staff pharmacist positions out to a local retail pharmacy and other hospital/clinical employers may do the same. Contemporaneous position vacancies for specific staff pharmacist positions could not be identified in the Central New York/Mohawk Valley Region of New York State.

**Conclusion #4:**   Based on the above labor market research, it is my professional opinion that Mr. Stevens would need additional training and education, especially a post-graduate residency program, in order to compete for a clinical pharmacy position. He faces an additional challenge in that he would be competing for a residency

position with recent graduates who have a Pharm. D. degree, which is a requirement of most residency programs. Moreover, the opportunity for residency openings in the Central New York and Mohawk Valley Regions are extremely limited as there are only a few openings per medical facility. Contemporary job vacancies identified confirmed Mr. Stevens' inability to qualify for such positions.

***Pharmacist (Mail Order).*** Mr. Stevens is fully qualified and competent to work as a mail order pharmacist, as direct patient contact and the administration of immunizations is not required. However, local employers and contemporaneous job openings in Mr. Stevens' labor market (Central New York/Mohawk Valley) were unable to be identified. One small company with mail order prescription service was identified in Gouverneur, New York; however, the rest are outside of New York State. Set forth below in Table 6 are my findings.

### Table 6: Mr. Christopher Stevens
### Employment Opportunities for Mail Order Pharmacists in Mr. Stevens' Labor Market

| Company Name | Mail Order Pharmacy in CNY/Mohawk Valley? |
|---|---|
| Express Scripts | No |
| CVS/Caremark | No |
| OptumRx/UHC | No |
| Prime Therapeutics | No |
| ProAct Pharmacy Services | No (North Country) |

**Conclusion #5:** Based upon the above, the occupation of a mail order pharmacists is not feasible for Mr. Stevens as there is severely limited potential for employment in the Central New York or Mohawk Valley Region of New York State.

***Pharmacist (Consultant).*** Mr. Stevens possesses the transferable skills to work as a pharmacist consultant. The labor market was canvased in an effort to identify job requirements and contemporaneous job openings. Set forth below are my findings.

**Table 7: Mr. Christopher Stevens**
**Pharmacist Consultant Contemporaneous Job Vacancies in the Central New York and Mohawk Valley Regions**

| Employer | Location | Job Requirements |
|---|---|---|
| CDPHP | Albany, New York | • Bachelor's degree in Pharmacy<br>• 3 years of experience with 1 year specifically in managed care, formulary development, network management, academic detailing, or drug utilization |
| Payless Drug | Portland, OR | • Current license in Oregon<br>• Understanding state and federal rules governing long term care<br>• One year experience in long term care preferred |
| Xerox | Sacramento, CA | • Three years of experience as a pharmacy consultant for a government or healthcare payer.<br>• One year MMIS experience<br>• Current pharmacist license |

**Conclusion #6:** Based upon the above, the occupation of a consultant pharmacist is not feasible for Mr. Stevens as he is not qualified for the position vacancies identified and contemporaneous job openings for the past 30 to 60 days could not be identified.

## Pharmacy Technician

Mr. Christopher Stevens is qualified to work as a pharmacy technician in any setting, clinical or retail, given his qualifications.   I studied actual contemporaneous position vacancies and associated wages for pharmacy technician positions that were posted within the last 30 to 60 days from the date of the present determination and within a 50-mile radius of his home in Whitesboro, New York. Set forth below in Table 8 are my findings.

Table 8:  Mr. Christopher Stevens
Job Openings, Job Title, and Job Requirements of Pharmacy Technicians

| Employer | Job Title | Job Requirements |
|---|---|---|
| CVS/Caremark | Pharmacy Technician | • Previous retail experience<br>• High School Diploma |
| Coram Specialty Infusion Services | Pharmacy Technician | • Some college preferred<br>• Demonstrated IV admixture skills<br>• Basic computer skills |
| SUNY Upstate Medical University | Pharmacy Technician | • High school diploma<br>• Six months experience filling prescriptions |

Source:  www.indeed.com and www.simplyhired.com.

**Conclusion #7:**  Mr. Steven's possesses the transferable skills necessary to work in the competitive labor market as a pharmacy technician earnings wages averaging $26,550 per year in 2014 dollars.

### Summary of Conclusions

Based on my review of the available documentation, my interview of Mr. Stevens, and the results of labor market research, it is my professional opinion, with a reasonable degree of certainty within the field of vocational rehabilitation, that:

1.  Mr. Stevens is **qualified and capable of working as a retail pharmacist with accommodations.**

2.  **Rite Aid did not make an effort to provide reasonable accommodation** for Mr. Stevens' disability in which he was subsequently terminated from employment.

3.  Based upon labor market research and Mr. Stevens' many relevant employability barriers, including, his advanced age of 59, his long-term unemployment, history of involuntary termination from employment, need for job accommodation, and the fact that he is competing for jobs with other pharmacists who have a Pharm.D. and post-residency training, the **probability of Mr. Stevens securing a retail pharmacist position outside of Rite Aid is nil.**

4.  Mr. Stevens, considering his work experience has been solely limited to retail, **is not qualified or competent to be hired as a clinical pharmacist.**

5.  Mail order pharmacist and consultant pharmacist are not considered to be a viable option for him to pursue, as they are not readily available in his labor market.

6.  Mr. Stevens is qualified and capable of working as a pharmacy technician **earning an average annual wage of $25,795 per year in 2014 dollars.**

7.  Finally, Mr. Stevens has a **significant competitive disadvantage, for any employment,** that severely impacts his ability compete in the labor market due to several barriers including: His age of 59.4 years (considered an older worker), the fact that he has only ever worked in retail, he has been involuntarily terminated from employment after 40 years of service, he has been absent from the labor market for over two-and-a-half years, and is competing for pharmacy positions with more recent graduates with a Pharm.D. and post-residency training. **Thus, his employability post-incident is severely diminished.**

## Certification

I hereby certify that I have no claims that are contingent upon the outcome of this matter. Further, I certify that the opinions expressed herein are based upon the facts available at the time of my determination; should these change, I respectfully reserve the right to revise my opinions.

Respectfully submitted,

*Karen A. Simone*

Karen A. Simone, MS, CRC, CLCP

**K. SIMONE & ASSOCIATES, L.L.C.**

## APPENDIX A:  Mr. Christopher Stevens

### Occupational Descriptions:

D.O.T. # 074.161-010        Pharmacist

**Source:** *Dictionary of Occupational Titles* (Washington, D.C.: U.S. Department of Labor, 2008)

CODE: 074.161-010
TITLE(s): **PHARMACIST (medical ser.)**

Compounds and dispenses prescribed medications, drugs, and other pharmaceuticals for patient care, according to professional standards and state and federal legal requirements: Reviews prescriptions issued by physician, or other authorized prescriber to assure accuracy and determine formulas and ingredients needed. Compounds medications, using standard formulas and processes, such as weighing, measuring, and mixing ingredients. Directs pharmacy workers engaged in mixing, packaging, and labeling pharmaceuticals. Answers questions and provides information to pharmacy customers on drug interactions, side effects, dosage and storage of pharmaceuticals. Maintains established procedures concerning quality assurance, security of controlled substances, and disposal of hazardous waste drugs. Enters data, such as patient name, prescribed medication and cost, to maintain pharmacy files, charge system, and inventory. May assay medications to determine identity, purity, and strength. May instruct interns and other medical personnel on matters pertaining to pharmacy, or teach in college of pharmacy. May work in hospital pharmacy and be designated Pharmacist,                Hospital                (medical                ser.)

# References

**Occupational Descriptions of Work Previously Performed:**

    (1)  *Dictionary of Occupational Titles,* Washington, D.C.: U.S. Department of Labor; and

    (2)  SkillTRAN LLC. (2014).   OccuBrowse (Version 5.70.06) [Computer software]. Spokane Valley, WA: SkillTRAN LLC.

**Functional Demands of Work Performed:**

    (1)  SkillTRAN LLC. (2014).   OccuBrowse (Version 5.70.06) [Computer software]. Spokane Valley, WA: SkillTRAN LLC.

**Residual Employability:**

    (1)  SkillTRAN LLC. (2014).   Online Transferable Skills Analysis Services.   Spokane Valley, WA.;

    (2)  *Dictionary of Occupational Titles, Fourth Edition,* U.S. Department of Labor, Washington, D.C., at *www.OALJ.DOL.gov;*

    (3)  *Occupational Outlook Handbook, 2006-07 Edition,* U.S. Department of Labor; JIST Works, an imprint of JIST Publishing, Inc., Indianapolis, Indiana, 2006; and

    (4)  Timothy F. Field, Anthony J. Choppa, and Roger O. Weed, "Clinical Judgement: A Working Definition for the Rehabilitation Professional", *The Rehabilitation Professional,* 17(4), pp. 185-194.

**APPENDIX B:**  Mr. Christopher Stevens

Transferable Skills Analysis

02/14/14                    PHARMACIST

                        PPS Report
                Copyright SkillTRAN, LLC   2001-2014


```
===============================================================
 *                                                           *
 *      W O R K   H I S T O R Y   E X P E R I E N C E        *
 *                                                           *
===============================================================
```

```
===============================================================
```

074.161-010  PHARMACIST (medical services)


J O B   D E S C R I P T I O N
------------------------------

DRUGGIST. Compounds and dispenses prescribed medications, drugs, and other
pharmaceuticals for patient care, according to professional standards and
state and federal legal requirements: Reviews prescriptions issued by
physician, or other authorized prescriber to assure accuracy and determine
formulas and ingredients needed. Compounds medications, using standard
formulas and processes, such as weighing, measuring, and mixing
ingredients. Directs pharmacy workers engaged in mixing, packaging, and
labeling pharmaceuticals. Answers questions and provides information to
pharmacy customers on drug interactions, side effects, dosage and storage
of pharmaceuticals. Maintains established procedures concerning quality
assurance, security of controlled substances, and disposal of hazardous
waste drugs. Enters data, such as patient name, prescribed medication and
cost, to maintain pharmacy files, charge system, and inventory. May assay
medications to determine identity, purity, and strength. May instruct
interns and other medical personnel on matters pertaining to pharmacy, or
teach in college of pharmacy. May work in hospital pharmacy and be
designated Pharmacist, Hospital (medical ser.)


```
===============================================================
```
TYPICAL OCCUPATIONAL CHARACTERISTICS
074.161-010 PHARMACIST (medical services)
---------------------------------------------------------------
             R  M  L                  G V N S P Q K F M E C
GED:         5  5  5      Aptitudes:  1 2 2 4 2 2 3 2 3 5 3

Maximum SVP:  7  (Skilled)           Temperaments:TJV

Strength:  L        CL BA ST KN CR CW RE HA FI FE TA HE TS NE FA DE AC CV FV
Physical Demands:   N  N  N  N  N  N  F  F  F  N  F  F  N  F  N  N  F  F  N

                       WE CO HO WT NO VI AT MV EL HI RA EX TX OT
Environmental Conditions:  N  N  N  3  N  N  N  N  N  N  N  O  O

MPSMS  code:   493        DRUGS
               920        MEDICAL AND OTHER HEALTH SERVICES
    WORK  field:   147    PROCESSING-COMPOUNDING

```
                 294          HEALTH CARING-MEDICAL
  I.D.    code:  573          MEDICAL SERVICES
  CENSUS  code:  3050         PHARMACISTS
  GOE     code:  02.04.01     PHYSICAL SCIENCES
  SOC     code:  3010         PHARMACISTS
  CIP     code:  51.2001      PHARMACY (B. PHARM., PHARM.D.)
  OES     code:  32517        PHARMACISTS
  Canada NOC :   3131         PHARMACISTS
```

```
  ***********************************************************
  *                                                         *
  *    CODED SUMMARY OF DEMONSTRATED CAPACITIES FROM WORK HISTORY    *
  *                                                         *
  ***********************************************************
```

074.161-010  PHARMACIST (medical services)

```
         R  M  L                        G V N S P Q K F M E C
  GED:   5  5  5            Aptitudes:  1 2 2 4 2 2 3 2 3 5 3
```

Maximum SVP:  7  (Skilled)            Temperaments:TJV

```
  Strength:  L      CL BA ST KN CR CW RE HA FI FE TA HE TS NE FA DE AC CV FV
  Physical Demands:  N  N  N  N  N  N  F  F  F  N  F  F  N  F  N  N  F  F  N
```

```
                    WE CO HO WT NO VI AT MV EL HI RA EX TX OT
  Environmental Conditions:  N  N  N  3  N  N  N  N  N  N  N  O  O
```

DEMONSTRATED WORKER FUNCTIONS
```
  -----------------------------------------------------------
       DATA              PEOPLE                  THINGS
  -----------------------------------------------------------
  1  COORDINATING    6  SPEAKING-SIGNALING    1  PRECISION WORKING
```

Experience with these Materials, Products, Subject Matter,or Services
```
  -----------------------------------------------------------
  MPSMS  code:  493      DRUGS
  MPSMS  code:  920      MEDICAL AND OTHER HEALTH SERVICES
```

Skill Level and Experience in these WORK Fields
```
  -----------------------------------------------------------
  (Skilled)       WORK field:  147   PROCESSING-COMPOUNDING
  (Skilled)       WORK field:  294   HEALTH CARING-MEDICAL
```

Work Experience in these DOT Industry Designations
```
  -----------------------------------------------------------
  I.D.   code:  573     MEDICAL SERVICES
```

Interest in these GOE Areas
```
  ---------------------------
  GOE    code:  02.04.01   PHYSICAL SCIENCES
```

Alternate Occupational Titles
```
  -----------------------------
```

CENSUS code:  3050      PHARMACISTS


Associated Instructional Programs
---------------------------------
 CIP   code:  51.2001     PHARMACY (B. PHARM., PHARM.D.)


Canadian Occupational Areas
---------------------------
 NOC   code:  3131      PHARMACISTS


```
==========================================================
 *   CODED OCCUPATIONAL SEARCH PROFILE      *
 *   ------------------------------------   *
 *   Occupations selected will not exceed   *
 *          these limiting factors          *
==========================================================
```

```
      R  M  L                          G V N S P Q K F M E C
GED:  5  5  5           Aptitudes:     1 2 2 4 2 2 3 2 3 5 3

Maximum SVP:  7  (Skilled)            Minimum SVP:  0
```

Temperament
Incompatibilities:


NO SUGGESTED OCCUPATIONS WILL EXCEED (Constant is assumed except as noted):
----------------------------------------------------------------------------

 Strength:  L        CL BA ST KN CR CW RE HA FI FE TA HE TS NE FA DE AC CV FV

 Physical Demands:

                      WE CO HO WT NO VI AT MV EL HI RA EX TX OT
 Environmental Conditions:


```
==========================================================
 *                                                        *
 *   A N A L Y S I S   O F   T R A N S F E R A B L E   S K I L L S   *
 *                                                        *
==========================================================
```

DIRECTLY TRANSFERABLE OCCUPATIONS are those which share at least one
 of the 3 digit WORK fields as known from the past work history
 AND which have at least one of the same 3 digit MPSMS codes from
 any of the jobs performed in the past.  Directly transferable
 occupations have primary job duties which are essentially the
 same as past work.  Little or no learning of job duties should

be anticipated in directly transferable occupations.

SEARCH FOR FEASIBLE OCCUPATIONS WITHIN IDENTICAL 3 DIGIT MPSMS AND WORK FIELD
-----------------------------------------------------------------------

SELECTION OF OCCUPATIONS:

Involving any of these Materials, Products, Subject Matter, or Services:
-----------------------------------------------------------------------
   MPSMS  code:  493     DRUGS
   MPSMS  code:  920     MEDICAL AND OTHER HEALTH SERVICES

      AND

Requiring Skill Level and Experience in any of these WORK Fields:
-----------------------------------------------------------------------
   (Skilled)          WORK  field: 147     PROCESSING-COMPOUNDI
   (Skilled)          WORK  field: 294     HEALTH CARING-MEDICA


Total number of occupations selected within worker's profile =        9


                S E L E C T E D   O C C U P A T I O N A L   T I T L E S
                ------------------------------------------------------
                          DIRECTLY TRANSFERABLE LIST

===================================================================
                                                     PHYSICAL
                                              CBSKCCRHFFTHTNFDACF
                                              LATNRWEAIEAESEAECVV
DOT CODE        TITLE                  SVP   STRENGTH  ------------------
-----------    ----------------------  ---   --------
074.161-010    PHARMACIST               7      L       NNNNNNFFNFFNFNNFFN
079.267-010    UTILIZATION-REVIEW COORDINAT  7   L     NNNNNNOOONFFNENNNNN
074.381-010    PHARMACIST ASSISTANT     6      L       NNNNNNFFOFFNFNNOFN
559.685-070    FERMENTER OPERATOR       4      L       NNONONFFFNNNNFNNNNN
074.382-010    PHARMACY TECHNICIAN      3      L       NNONNNFFFNNONFNNOON
599.585-010    STERILIZER               3      L       NNNNNNFFONNNNFNNNNN
559.687-014    AMPOULE SEALER           2      S       NNNNNNFFFNNNNNFNOONN
559.687-034    EGG PROCESSOR            2      S       NNNNNNFFNNNNNFNFFNN
   687-030    SIFTER                    2      L       NNONNNFFOONNNFNOFNN

# Karen A. Simone, MS, CRC, CLCP
## Vocational Rehabilitation Specialist and Life-Care Planner
215 Brookford Road, Syracuse, New York 13224
(315) 560-5063
*ksimone@twcny.rr.com*

**EDUCATION:**   M.S. - Syracuse University, Rehabilitation Counseling 1993
B.A. - SUNY Oswego, Public Justice 1990

**CERTIFICATIONS:**   Certified Rehabilitation Counselor   CRC # 11351
Certified Life-Care Planner   CLCP # 1128

**PROFESSIONAL AFFILIATIONS:**  International Association of Rehabilitation Professionals

**PRESENTATIONS:**

2010 - 2012   Presenter, "Future Health-Related Goods and Services: The Life-Care Plan" Syracuse University School of Law: Advanced Torts, John Cherundolo, Esq., Adjunct Professor.

**PRESENT POSITION:**

**K. Simone & Associates, L.L.C, 215 Brookford Road, Syracuse, New York, 13224**
**Vocational Rehabilitation and Life-Care Planning Specialist:  August 2012 to present:**

> ➢ Conducts employability and earnings capacity evaluations of individuals with disabling conditions and provides expert testimony on behalf of plaintiffs and defendants in various legal matters including personal injury, medical malpractice, matrimonial, child custody and SSDI determinations.

**PREVIOUS EXPERIENCE:**

**K.W. Reagles & Associates, L.L.C., Bridgewater Place, Suite 600, 500 Plum Street, Syracuse, New York 13204**

> ➢ Vocational Rehabilitation and Life-Care Planning Specialist:  January 2010 to August 2012

**MetLife Disability, 5950 Airport Road, Utica, New York 13424**

> ➢ Vendor Relationship Manager: October 2006 to December 2009
> ➢ Operations Manager – Appeals, Litigation and Complaints: May 2005 to October 2006
> ➢ Specialty Services Manager: March 2002 to May 2005
> ➢ Vocational Rehabilitation Consultant: February 1997 to March 2002

**Vocational Rehabilitation Counselor/Consultant:**

> ➢ SUNY Upstate Medical Center, Syracuse, New York, 1996 to 1997
> ➢ Crawford & Company, E. Syracuse, New York, 1992 to 1996

H2207716.1}